2-13-0247 for the people of the state of Illinois, Appalachian, the Jesse V. Martinez Appelmont. Arguing for the Appelmont, Attorney Mark G. Levine. Arguing for the Appalachians, Attorney Kathryn Holt. Good morning, Counsel. Good morning, Counsel. I'm Mark Levine, the Office of the State Appellate Defender, representing Jesse Martinez in his appeal from denial of his post-conviction petition after a third stage evidentiary hearing. Now, the whole point of the Post-Conviction Hearing Act, of course, is to permit revisiting convictions as when new evidence of actual innocence is discovered, because the state of Illinois has no interest whatever in keeping innocent people in its prisons. The standard at a third stage evidentiary hearing set in Washington and reaffirmed in Coleman, which we filed a motion to cite additional authority, that's 2-13-IL-113-307, which reaffirms Washington, really, but it adds a little bit of, well, adds a little bit. Coleman says if any of the evidence presented at the third stage of the evidentiary hearing is new, material, and non-cumulative, then the court must consider whether that evidence places the evidence presented at trial in a different light and undercuts the court's confidence in the factual correctness of the verdict. So what is the actual new evidence that you indicate or you feel was produced at this hearing? It's undisputed that the evidence presented by Patrick Innocencio was new, the court found that, and what he said was two things that are new. One, he said it was not Jesse, my client, Jesse Martinez, who was the second shooter. Now, Patrick, of course, he pled guilty to being one of the shooters, and we know who the second person was. It was a woman, Melissa Sandoval, who was in the room. She wasn't a shooter, but she was there, and the question is who was the other one, the second shooter? Martinez, Jesse Martinez, was convicted of being that second shooter, but now Patrick comes forward. He had not testified before, and he said it was not Jesse. Instead, it was Omar Delgado, who was a high-ranking officer in the Latin Kinks. Where is Omar? Where is Omar? Did he testify? Omar testified at trial. He did not testify at the post-conviction. He is not in prison. I actually checked the DOC listing yesterday. He's still not in DOC. And as I mentioned in the brief, there is a civil suit that the state has filed against him as an officer in the Latin Kinks. Now, in 1999, at the time of this shooting, he was the enforcer for all of Aurora, while Patrick was a neighborhood enforcer in Aurora. My point was, where is Omar in a general sense? Where was Omar at this hearing? Was there an attempt to put Omar on? I don't know whether there was an attempt or not. The record doesn't show whether there was an attempt to put Omar on. I don't know the answer to that. Was there an attempt to get a statement from Omar? Whether there was an attempt, whether the post-conviction counsel attempted to do this, I don't know. If he did, it's not in the record. And your client was identified by one of the victims, Michael Johnson, identified, correct, at trial? That's true. The testimony at trial was all sorts of conflicting. In addition to the Latin Kinks witnesses who were recanting what you're talking about over here, there was another member of the other gang, Maria Rodriguez, who said that the two shooters, the two men shooters who came in were the same two men who had been in the room about a half an hour earlier. Now, it's undisputed that those two were Omar Delgado and Patrick Inocencio. So even from the other gang, we have conflicting testimony about who the shooter was. It's the fact finder's role to consider those inconsistencies, and ultimately the trial court made those findings credibility, correct? That's correct, Your Honor. So you're asking us essentially what's our standard of review? The standard of review here is, well, let me expand on this. I'm answering your question. The standard of review is, first of all, whether the new evidence puts the old evidence in a new light. Well, you've got a hearing. You've got a hearing. Right. You're beyond that. You've got the hearing. Now, what's the standard of review here? The standard of review is whether the decision, the ultimate decision, was contrary to the manifest weight of the evidence, and I'm arguing that it is. All right. So Patrick is new. He is new evidence, newly discovered evidence. But while the judge found that, the judge also found him to be not credible, not trustworthy, and one other thing, and part of it relating to his credibility. And one reason is, I think, or you might want to comment, Patrick made it clear that he is still very proud to be a Latin king, and maybe that was more, being a Latin king was more important than a lot of other things, including the truth. So how are we to view that particular finding and that particular evidence and the finding by the trial court judge? If anything, Your Honor, this shows his candor, because if he wanted to lie to the court, it certainly would have been easier for him to say, oh, no, my oath is the most important thing in the world to me. If he wants to lie, then that's the lie to tell. He didn't tell that lie. Instead, he said, no, I'm a Latin king. I still am, and I'm proud to be a Latin king. He was a member of this organization since he was 12 years old. This is my difficulty with this. The bottom line, Judge Hall, in this case, who heard the post-conviction, made these pretty dramatic, if you will, findings of credibility on all of the witnesses that testified on the defendant's behalf. How do we override those very clear, succinct, unqualified findings that each of these witnesses were simply not credible, untruthful, and the fact that they waited for so many years to even come forward with this testimony against manifest weight? How do we get around that? The judge explained, gave his reasoning for why he found them not credible, and the very first, actually I think the first three reasons he gave concerning Patrick Innocencio was his involvement with a gang. This is a gang shooting. All the occurrences, witnesses, were gang members or gang involved. Everybody, they all were. So if that's a reason for making him, finding him not credible, then the trial testimony was no more credible. So the two, it's a wash. But Patrick didn't testify at trial. I'm sorry, no he didn't. No, so. My point is, he was a gang member, yes he was, and so were the rest of them. So being a gang member and being deeply involved in gangs, they all were. So that can be the determining factor in deciding who to believe over here. That's the first and most important. His defense was alibi, correct? That's correct. Did his alibi change? No. Did it change at the post-conviction hearing? No, sir. He had alibi witnesses. But he didn't testify at the trial, correct? He did not testify at trial. He did, of course, testify at the post-conviction hearing. What night of the week was this? What night of the week was this? What was his murder? Was it Friday night, Saturday morning? I'm afraid I don't know. If the purpose of putting your client in that hotel room was to protect Omar, or was on the order of Omar, because your client allegedly was nothing in the gang, he was new, he was not important. Right. Why are these people coming forward now, especially Patrick, who's still very proud to be a Latin king? Maybe is it Melissa, who is concerned, but she feels that this is the right thing to do. Why are they now coming forward? One of the points that the judge made was that Patrick and Jesse were friends. So Patrick had a conflict. He's loyal to his gang, and he also has some loyalty to his friend. So now his friend's been in prison for 14 years over here, and there's always a conflict. Remember, Patrick refused to testify at Jesse's trial, so the conflict existed even way back there. When he was first questioned by police, he did what the gang told him to do. He placed Jesse at the scene, but then he refused to testify at trial. So this is not something new that comes up all of a sudden after 14 years or so. The two women, Melissa Sandoval and Monica Martinez, they both tried before trial to speak to Bruce Self, who was Jesse's trial attorney, before trial, to tell him that what we told police, that's not true. So they didn't wait for 14 years. But they didn't follow through. Right. I mean, they testified, and we kind of thought about it, but then we didn't do anything about it. Well, this is interesting, too. Monica just didn't show up. We don't know why. Melissa did show up. She spoke to him. She told him that what I said is not true. Jesse was not the shooter. Bruce Self wanted to get a court reporter to take down her statement. He couldn't get one that day, and then she disappears. So we have something going on. We have a very small tip of, I think, a large iceberg here about what's really going on over here. We've got two witnesses, potentially very strong for the defense, who both surface briefly and then disappear. They become unavailable to the defense. And then at trial, here they are again. Now, we don't know what's going on over here. We do know that the Latin Kings wanted Jesse nailed for this because it was important to keep Omar, the high-ranking officer, out of prison. But Monica, from the other gang, I believe, did testify at the trial, ultimately, that the shooters were the two people who were there earlier. Right. And the two people earlier. That was, I think, Maria. Maria. All right. Somebody did testify to that. Too many M's in the list. Yes, confusing numbers. So that was heard by the trier of fact at his original trial. Right. My point in raising that was not that he should have won his original trial, that he should have been acquitted, but that the testimony at the original trial was very, very, very far from overwhelming. It was conflicting. It was lots of conflicting. And now we have new evidence coming forward. So we don't need tremendous evidence to tip it. We need maybe a little bit of evidence to tip it. And that's the standard, according to Coleman. Coleman says that the real question is not whether the judge at the third stage hearing believes the witnesses, but instead he is to predict, try to predict, what the future jury would do. That's in paragraph 113, I think, of Coleman. So his finding of credibility, I realize that this is close, but there is a subtle difference. The question is not whether either judge believes this. The question is what do I think a jury is probably going to do if they have this evidence. Since the evidence at the original trial was so conflicting, it tipped towards guilt. So now we've got evidence coming in that not only says it was Omar and not Jesse who did it, but maybe even more importantly explains why that explains what happened before. Remember, Patrick said two things that were new. Not only he said that Jesse didn't do it, it was Omar. He said the gang gave orders that Jesse is to be named. And he said, and that's why I named him, named Jesse in the first instance. Tell me why Patrick's information is, quote, unquote, new. Why is it new? Because he hadn't said it before. That doesn't make it new. Well, he had refused to testify. And your client knows he's innocent, and this information from people who were involved is available. Go get it. Go get an affidavit. Where's the explanation for that? He refused to testify. Not testify. Well, this came up in court. I'm talking about his years in the penitentiary. I'm sorry? During his years in the penitentiary since then, since he pled guilty. Well, he did. He filed his post-conviction petition. No, I'm talking about Patrick. What do you say is new information? Why is it new? Because. If your client knew, your client knows he was not involved. Correct. Why not try to get an affidavit? He did. He did try to get an affidavit, and eventually he got one from. . . When did he first start trying? Gee, this was filed originally in, I forget now, I think the trial was in 2001. I think it was filed in 2003 originally. I could be wrong about that, but it was a long time ago. Then it wound its way. . . This didn't just burst out already 14 years later. It was in court for a long time. It was many years before the original pro se petition with the affidavits was amended. I think there were amended affidavits put in. This was milling around in the trial court for years and years before it ever got to this evidentiary. If you have anything you want to finish or finish a thought, that's fine, and then you'll have time for a response. Thank you. So as in Coleman itself, the evidence presented at the hearing together with the evidence presented by Jesse at trial, his alibi witnesses and the other conflicting evidence, places the evidence presented by the state in a new light, and that's the standard that Coleman talks about, undermining the confidence in the result that it produced. Weighed against the state's evidence, the defendant's new evidence is conclusive enough that another trial in fact would probably reach a different result. The standard is not whether there's still enough evidence. This is not a reasonable doubt standard, as Coleman talks about this. It's not whether he could still be convicted. The question is whether a new jury would probably reach the opposite result. Therefore, as in Coleman, the denial of the post-conviction petition and the conviction should be reversed, and the matter remanded for a new trial. Thank you. Thank you. Thank you. Ms. Coles. Good morning, Your Honor. It's me to release the court. Catherine Coles on behalf of the people. Counsel. The trial court in this case properly dismissed the third stage evidentiary. It properly dismissed the third stage petition at the evidentiary hearing. The trial court made determinations of credibility, particularly to Patrick, and found him to be not credible as a witness. And this decision should not be overturned. The trial court made specific findings of credibility, which are found on page 853 of the common law record. He's very specific. He stated that Patrick pled an allegiance to the gang higher than an oath to tell the truth in court. He's been friends with Jesse since 1994. The two of them are both in the same gang. During his testimony, he stated he was evasive on cross-examination. He admitted he lied in the past and that Jesse and him had discussed this case when housed together at the Department of Corrections, that they exchanged letters over the years, and that it was 14 years later that he came forward with this affidavit and said that he alleged that Jesse was not the shooter and that it was Omar who was the shooter. At the trial, Omar testified. Omar testified that Jesse was not there at all. So for this theory that Omar said to everyone that you need to name Jesse, Jesse was the second shooter, not me, why would Omar testify then at the trial that Jesse was not there whatsoever? Additionally, there are three witnesses that testified that Omar, that there's three witnesses, Maria, Natalia, and Michael, who testified that there were three people who came in prior to the shooting around 930 a.m. And one of those people who came in was dressed in beige and holding a blue bottle. And that person would be Omar Delgado. When you look at his testimony, he testified he came in to the room prior to the shooting holding a blue bottle. Those three witnesses testified that he did not come in at the time of the shooting. It was the two dressed in black who came in, covered their faces with hoodies, and shot up the room. And Michael Johnson specifically testified that it was Jesse who was the shooter, the petitioner. He identified him in a photo lineup prior to the trial and identified him at the trial. This evidence was sufficient and the trial court made the proper determination in dismissing the third stage petition. This is distinguishable from the facts of Molstad or where the co-defendants came forward soon after the trial and while they still had consequences. Before they were sentenced. Here we have 14 years later, Patrick's coming forward and saying that Jesse was not the shooter, it was Omar. He doesn't face any legal consequences from this statement. Counsel makes a point that although Patrick still is a proud Latin King or almighty Latin King, whatever the situation is, and he does admit that he's lied in the past, that now we should look at his testimony differently because this time has passed and he's coming forward. And he's not lying this time. He's being very candid and therefore that's an indication he's not lying. What's your position on that particular argument? Well, the trial court specifically made findings of how Patrick testified. He testified that Patrick was evasive on cross-examination and that he admitted he'd lied in the past. And that he was cold and callous when he testified about killing Eric Johnson, showed no remorse. And he found all those things made it so Patrick lacked credibility. So the fact that he's coming forward with his allegiance to the gang and being very candid, when you look at all the other circumstances that tend to indicate that Patrick is not credible whatsoever. Well, I guess the question is what's his purpose in coming forward at this point in time when he has nothing to gain, nothing to lose? I mean, if you know what, and I think this is part of counsel's argument. Why would he come forward at all? He was friends with him before the trial with Jesse. He's still friends with Jesse. They've had communications while in custody. Maybe they've even been in the same facility. So why did he come forward at all? Well, Justice Hutchinson, if he's been with him over these years, I can't speculate to what exactly the two of them have discussed in prison. But if they've been friends, maybe over the years as they've discussed this case, that could be a reason he came forward. But when you look at the credibility... Could it be, you know, Jesse's got a 76-year sentence and Patrick for the actual shooting has a 32-year sentence and he's feeling a little guilty? It could be that. I mean, Patrick took a plea. Jesse did not. And he pled allegiance. Both of them are still members of the Lion King and both of them pled allegiance to their gang. So it's unclear exactly why. I mean, it could be because he feels bad for his friend. They have been friends since 1994. But overall, the judge found him not to be credible for reasons beyond just the fact that they've been friends, the way he testified, and the fact that he had lied in the past. And he outlined this very clearly in a written order. In addition, the trial evidence, there were four alibi witnesses who testified. One of them was Ruben, who testified that he was at the party, at the hotel party, and that Jesse Martinez was never there. Omar testified Jesse Martinez was never there. And then he had his girlfriend and I believe mother of one of his children testify that he was at another party. And the jury heard all of this evidence and they rejected this evidence and found that he was there and he was at the shooting and he was a shooter. And I didn't do a motion to cite additional authority. People be mind test. And I was citing this to for the proposition that evidence has to be so conclusive in character to change the outcome. And here I don't believe that evidence is so conclusive in character that it would change the outcome of the trial. My comment on Coleman, the case the council has talked about. As far as Coleman goes, I don't. Again, in this case, that's different than the case in Coleman, where in Coleman they had multiple co-defendants come forward and say that he wasn't there. It was the other guys, all these other, because there was around eight defendants who went in there. Co-defendants total who went in and robbed this house. So the underlying facts are much different than this case where we have three co-defendants and we also don't have multiple people recanting. We have Melissa, who the trial court ruled that she did not recant her evidence, her testimony from trial. And Melissa testified at trial that it was Jesse Martinez with her who was the second shooter. And this testimony was not changed at the post-conviction hearing. She testified she was afraid to say who the second shooter was, which was consistent to what she testified in the first place, because she did not want to testify that Jesse Martinez was the second shooter at the first trial. She only testified to that after she was held in contempt of court and worked out a deal with the prosecutor to have relocation expenses. She was ultimately found not guilty in this particular sequence, right? She was, and I believe that was just prior to the defendant's trial. I think December 2000 her trial was and then shortly after the defendant was found guilty. And then you also have evidence presented at trial that the petitioner fled and went to New Mexico and said he couldn't go back to jail and he tried to allude to police. And this was also presented to the jury. So when we look at everything that was presented to the jury and we look at the evidence of Patrick, who was deemed to be not credible, have an allegiance to the gang and friends with Jesse Martinez, the trial court's decision was not against the manifest weight of the evidence. And this court should affirm that decision. And as far as Monica and Melissa's testimony, both of their testimony at the evidentiary hearing was determined to be not newly discovered and the trial court only went on to make credibility findings and an alternative. So that evidence wouldn't even be considered. You don't particularly argue, excuse me, that the judge is finding that Patrick is newly discovered or Patrick's evidence was newly discovered. You not disagreeing with that particular decision of the trial court? I hadn't argued that when I did review people be Montez in preparation for the oral argument, which came out in February. I did note that in that case, you have to look at this court, how you have to look at the underlying facts, not whether the person could have testified or not with the Fifth Amendment issue in that case. And when you do look at the underlying facts here, this information has been available. I mean, if you look at their first appeal, they did argue that Omar Delgado was possibly the shooter and not Jesse. So this theory of the case has been available. But I did not present that in my brief. I would ask if the court has no further questions. I would ask this court to affirm the trial court's decision finding that there is no need for a new trial. Thank you. Counsel. On the question of whether it's new, I refer the court to paragraph 16 of Coleman where they address that. Over there, the five men who are now coming forward and the five co-defendants who are coming forward, it said the Supreme Court said they likely would have asserted their Fifth Amendment privileges. And the court concludes that, therefore, their testimony, therefore, is new. Over here, Patrick, I'm sorry. Well, had Patrick pled guilty already by the time of Jesse's trial? Yes, Patrick had pled guilty. He was offered immunity at trial, at Jesse's trial, and he refused to testify. So paragraph 16 of Coleman deals with that issue. In addition to the trial court having made a finding that it's new, a couple of other points. One, they make a point that they communicated while in prison. Well, of course they did. Jesse is trying to put together a post-conviction petition. He needs Patrick's affidavit that he ultimately got. So they had to communicate. Of course they did. They had to communicate. Did that mean there's letters that may have gone back and forth? I wouldn't be surprised. Somehow or another they had to have communicated. There were none attached to the petition, correct? Letters between them? No. Just Patrick's affidavit was attached to the petition. For example, a letter from your client urging Patrick to come forward and tell the truth with a date. That's not in the record, but we know something like that. Those efforts, there's nothing in the record about what those efforts were, correct? Correct, but obviously there were some efforts because we know the result. Point one. Two, a point on risk. These witnesses who are now recanting their testimony saying that Jesse was at these parties, no, they're not risking. Prosecution is not what they're worried about. The Latin kings kill people who cross them. They have a lot of risk over here. And we see that most clearly, and as I argued in the brief by Melissa Sandoval, the very strongest piece of corroboration for Patrick's testimony is her fear. She said in her affidavit that Jesse wasn't the second shooter. Who was the second shooter? She climbs up over here and she says specifically that she's not around to protect her family. She knows the risk involved over here. If Jesse were the second shooter, what's she afraid of? He's in prison. He's got no rank. She's already named him a few times before. Who's the second shooter? It's Jesse. But if it's Omar, she's afraid. If it's Omar, she's not naming. Now, this makes a lot of sense. If Omar is the second shooter, she knows exactly what to expect or what to worry about anyway if she names Omar. But the fact that they're now turning on a prior gang order, isn't that relevant? Sure, it's relevant. So why are they turning? Again, what's the motivation? They feel sorry for Melissa was found not guilty. Was she feeling guilty that he's in for 76 years and she's not? I don't know whether it's guilty, but you know what? She was found not guilty. It wasn't that she wasn't there. She was found not guilty because the court believed her defense that she was forced to be there by the Latin kings. These guys are serious. Now, counsel distinguished Coleman by saying over there there were five codees that came forward and said that the petitioner wasn't the one who did it. Okay, so here we only have two co-defendants who say that the defendants. Okay, there's three more over there, but is this significant? Actually, Coleman is very much like this case in that way. We have co-defendants coming forward and saying that petitioner didn't do it. Counsel mentioned his fleeing as evidence of guilt. I certainly understand the argument, but think what else he was fleeing. He knew by this time probably that the Latin kings were trying to put him in Omar's place. He had real good reason to flee. And how did he know that? I don't know how he knew it. We know that he fled. We know he fled. My opponent is saying therefore he fled because he's afraid of being prosecuted. I'm just saying he had another good reason to flee. The Latin kings are trying to get him to take the blame for Omar, so he had good reason to flee. We don't know which of those is really the reason. But we can't conclude from this that if he fled, he must have fled because he was guilty. I guess your point is that the obligation of citizens to tell the truth and come forward, the general obligation of witnesses is overridden by gang influences in most cases involving gangs. Is that what you're saying? We can't believe what gang members say when a shooting happens, when a hotel room is shot up, because they're all gang members, so we just can't believe them. Let's wait 14 years and see what they have to say then. I'm not saying that really. What I'm saying is that we're humans. We know people's fears. We know people often want to do the right thing, but maybe they're afraid of getting shot if they do. You're familiar with the code of silence that the Latin kings have. Is there evidence of that in this case? I've heard about it in other cases. In this case, what we have is something stronger than that. It's not just a code of silence. It's tell the police that Jesse did it. Eventually, after years breaks down, the question that was raised before is when was this filed? I was guessing when it was filed. I looked it up when I was sitting over there. It was actually filed in 2006, and then it was amended in 2010. Do I know if the courts have any other questions? No. Thank you very much for hearing us. We do have the motions that have been made. We will grant those motions to cite additional authority by both counsel. We will take the matter under advisement, issue a decision in due course, and thank you very much for your arguments this morning. Thank you. We will stand adjourned.